

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

January 7, 2022

BY ECF
Hon. Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1610
New York, New York 10007

      Re:    ***Khan v. U.S. Department of Defense et al.*,**
           **18 Civ. 5334 (DLC)**

Dear Judge Cote:

      The parties write respectfully in this Freedom of Information Act ("FOIA") case to provide a report on the status of this matter, in accordance with this Court's Order dated November 5, 2021 (ECF No. 45).

      This case concerns three FOIA requests that Plaintiff submitted to the United States Central Command (CENTCOM) regarding reported incidents of civilian casualties from airstrikes during Operation Inherent Resolve. CENTCOM has been making productions in this case approximately every sixty days. As noted in the parties' November 5, 2021 status report (ECF No. 44), CENTCOM made its twentieth and final production of records on November 4, 2021. CENTCOM referred a small volume of records to the United States Air Force Central Command (AFCENT) for direct response to Plaintiff.

      CENTCOM referred the remaining requests—which Plaintiff had identified on lists dated November 24, 2020, and March 1, 2021—to the United States Special Operations Command (SOCOM) to determine whether SOCOM may have responsive records relating to those requests. SOCOM conducted searches to determine whether it has records responsive to the referred requests and located thirteen additional records, totaling 81 pages.

      Counsel for the parties have met and conferred as to the next steps in this matter. As set forth below, the parties have differing proposals as to the timeline for Defendants to complete their processing of those records.

      Defendants' statement: In the November 5 status report, SOCOM reported that it was in the process of conducting searches for records responsive to the requests on Plaintiff's November 24, 2020 and March 1, 2021 lists and had located some responsive records. SOCOM further reported that it would make its best efforts to process at least some of those records by December 31, 2021. SOCOM not only completed its searches for responsive records, but completed its own processing of the identified records (to identify information that needs to be

redacted to protect SOCOM's equities) by the target date of December 31.  In reviewing those records, however, SOCOM determined that the records needed to be referred to CENTCOM for consultation and any proposed releases reviewed by the Office of Secretary of Defense (OSD) before they can be released to Plaintiff.  Defendants will make their best efforts to complete this process by March 1, 2022.

Plaintiff's request that this process be completed within just 30 days is not practicable. The review and consultation process is not as simple as Plaintiff suggests.  Although SOCOM has completed its initial review of the records, CENTCOM has to review the records for the first time.  The documents are all classified and require painstaking, line-by-line review by subject matter experts who are also responsible for conducting CENTCOM's daily military mission. Because the records reside on classified systems, they cannot be accessed remotely and can only be reviewed in person.  At the present time, in-person staffing is under significant stress due to the pandemic and the current Omicron surge.  Moreover, CENTCOM has many other FOIA requests and litigations that also require attention in the next thirty days.  These include multiple other FOIA requests submitted by Ms. Khan—including one seeking records regarding more than 1400 airstrikes—that are the subject of a separate but related FOIA litigation that has been referred to Your Honor.  *See Khan v. United States Department of Defense et al.*, 21 Civ. 8105 ("*Khan II*").  The Court has scheduled an initial conference in *Khan II* for January 14, 2022, and the parties are currently conferring regarding a schedule for completing searches and processing records in that case.  The same CENTCOM personnel who are reviewing the records remaining at issue in *Khan I* are also involved in conducting searches and reviewing records in *Khan II* and other FOIA cases.  For all these reasons, CENTCOM will need at least 30 days, and more likely 45 days, to complete its review of the records.  Once CENTCOM's review is completed, SOCOM's and CENTCOM's withholdings will need to be consolidated and the production set will then need to be finalized and approved through multiple levels at SOCOM before it can be reviewed and approved by OSD and produced to Plaintiff.  As noted, the various components will make their best efforts to complete this multi-step process by March 1, 2022, which is already an expedited timeframe.

The authorities cited by Plaintiff do not support an earlier deadline.  First, even in cases in which the plaintiff is entitled to expedited processing based on an asserted "compelling need" for the requested records, the relevant standard for processing is what is "practicable."  5 U.S.C. § 552(a)(6)(E)(iii).[1]  Here, for the reasons set forth above, thirty days is not practicable.  Second, there has been no unreasonable delay in this case.  To the contrary, over the past three years, CENTCOM has been making productions on the sixty-day schedule proposed by the parties and

---

[1] Contrary to plaintiff's suggestion, 5 U.S.C. § 552(a)(6)(A) does not require agencies to make a final processing determination within 20 working days.  That would be impossible, particularly in FOIA cases like this one in which a plaintiff seeks thousands of records.  Rather, courts have recognized that "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013); *see also Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012) (even in cases of expedited FOIA processing, "[t]he statute does not assign any particular time frame to release of the records sought").

ordered by the Court, and CENTCOM has sought only a handful of modest extensions during that time period.  Indeed, Plaintiff's recent reporting cited below relies substantially on records produced by CENTCOM in this case.  Finally, Plaintiff's request fails to account for the extraordinary circumstances presented by the ongoing pandemic, which as explained above poses substantial staffing challenges, particularly with regard to processing classified records. *See Documented NY v. United States Dep't of State*, No. 20-CV-1946 (AJN), 2021 WL 4226239, at *4 (S.D.N.Y. Sept. 16, 2021) ("Courts in this district have responded to the effects of COVID-19 by reducing or eliminating State's obligation to process FOIA documents.").  Indeed, as Judge Nathan noted in *Documented NY*, even in the *Open Society Justice Initiative* case cited by Plaintiff below—"in which Judge Engelmayer had ordered State to produce documents at an exceptionally high rate of 5,000 pages per month"—"Judge Engelmayer granted State's request to stay its production requirement, a stay that remains in place today because of State's continued constraints." *Id.* (citing No. 19-CV-00234-PAE, Dkt. No. 145 (Mar. 30, 2020); Dkt. No. 245 (Sept. 14, 2021)).

For all these reasons, Defendants respectfully request that the Court afford them until at least March 1, 2022, to complete processing of the records identified in the supplemental searches conducted by SOCOM.

Plaintiff's statement:  Plaintiff respectfully requests that the Court order Defendants to complete their processing of the 13 additional records located by SOCOM, which Plaintiff understands consists of no more than 81 pages, within 30 days.

On December 18, 2021, *The New York Times* published a front-page investigative story by Plaintiff regarding civilian casualties resulting from the United States' air wars in the Middle East that was based in significant part on records obtained from Defendants in this case.  *See* Azmat Khan, *Hidden Pentagon Records Reveal Patterns of Failure in Deadly Airstrikes*, The New York Times (Dec. 18, 2021), https://www.nytimes.com/interactive/2021/12/18/us/airstrikes-pentagon-records-civilian-deaths.html.  Plaintiff's reporting has received widespread attention and prompted public debate in the United States and across the world.  *See, e.g.*, *What modern drone warfare means for both civilians and soldiers*, WNYC (Dec. 21, 2021), https://www.wnyc.org/story/what-modern-drone-warfare-means-for-both-civilians-and-soldiers/; Jordan Cohen & Jonathan Ellis Allen, *The Problem with Drones that Everyone Saw Coming*, Defense One (Dec. 21, 2021), https://www.defenseone.com/ideas/2021/12/problem-drones-everyone-saw-coming/360025/; Conor Friedersdorf, *U.S. Drone Strikes are Even Worse than We Knew*, The Atlantic (Dec. 22, 2021), https://www.theatlantic.com/ideas/archive/2021/12/us-drone-strikes-pentagon-papers/621094/; Melissa Koenig, *US airstrikes in the Middle East have killed thousands of civilians, including children, in a 'pattern of failures', new Pentagon documents reveal*, Daily Mail (Dec. 19, 2021), https://mol.im/a/10326575; AFP, *Pentagon documents reveal 'deeply flawed' US air war in Middle East — NYT*, Times of Israel (Dec. 19, 2021), https://www.timesofisrael.com/pentagon-documents-reveal-deeply-flawed-us-air-war-in-middle-east-nyt/.

In light of the urgent, immediate public interest in the subject of the records at issue in this case, there is an acute need for timely dissemination of additional information to the public.

*Cf. Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (noting FOIA is "a means for citizens to know what their Government is up to[,]" which is "a structural necessity in a real democracy." (cleaned up)).  Indeed, "Congress has long recognized that "information is often useful only if it is timely" and, therefore "excessive delay by the agency in its response is often tantamount to denial." *Open Soc'y Just. Initiative v. Cent. Intel. Agency*, 399 F. Supp. 3d 161, 164 (S.D.N.Y. 2019) (citing H.R. Rep. No. 93-876, at 6271 (1974)).  Thus, "[i]t is the duty of the court to uphold FOIA by striking a proper balance between plaintiffs' right to receive information on government activity in a timely manner and government concerns, including agency capabilities and the heightened clearance process for issues of national security." *Id.* at 166 (citation and internal quotation omitted); *accord Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." (citation omitted)).

Plaintiff's proposed schedule of 30 days to review 81 pages of records (fewer than three pages per day) is reasonable, below what FOIA requires, and below processing rates that previously have been ordered in this District.  *See, e.g.*, 5 U.S.C. § 552(a)(6)(A) (requiring determinations to be made within 20 working days); *Color of Change v. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (noting prior court order to process 500 pages per month).  For example, in *Open Society Justice Initiative*, the court ordered the Department of Defense to process 5,000 pages of records per month, noting the "paramount public importance and urgency to [the] request for records," and denying a motion for reconsideration predicated on "DOD's limited FOIA processing capabilities."  399 F. Supp. 3d at 168.  The court determined that "[w]eighing DOD's duties to effect prompt disclosure under FOIA against its legitimate administrative constraints, the Court finds that a 5,000-page-per-month processing rate remains 'practicable' for FOIA purposes, even if meeting this demand calls upon DOD to augment, temporarily or permanently, its review resources, human and/or technological." *Id.* at 169; *see also Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering the FBI to process 5,000 pages per month in response to a FOIA request in light of, *inter alia*, the "importance of [the plaintiff's] work").  Indeed, the processing rate proposed by Plaintiff—81 pages in 30 days— is below the rate at which Defendants have already been processing records in this case.  *See* Letter, ECF No. 13 (joint letter from the parties in this case where Defendants commit to process at least 300 pages every 60 days).  The relevant FOIA requests—for which Plaintiff sought expedited processing—have been pending for years.  *See* Compl., ECF No. 1; *cf.* 5 U.S.C. § 552(a)(6)(E) (requiring agencies to process requests granted expedited processing "as soon as practicable").  Defendants' proposal that it be granted 60 additional days to process 81 pages of records is not reasonable and should be rejected.

Accordingly, Plaintiff respectfully requests that the Court order Defendants to process the remaining 13 records located by SOCOM and release all portions of such records Defendants contend are not exempt by February 7, 2022.

\*   \*   \*

The parties jointly propose to submit a further status report in this case on or before April 1, 2022.  At that time, the parties expect to be in a position to advise the Court whether any matters remain to be litigated in this case.

We thank the Court for its consideration of this submission.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

By:  /s/  *Sarah S. Normand*
SARAH S. NORMAND
Assistant United States Attorney
Telephone: (212) 637-2709
Email:  sarah.normand@usdoj.gov
*Counsel for Defendants*

*/s/ Katie Townsend*
Katie Townsend
The Reporters Committee for
Freedom of the Press
1156 15th Street NW
Suite 1020
Washington, D.C. 20005
Phone:  202.795.9300
Email:  ktownsend@rcfp.org
*Counsel for Plaintiff*